UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAINSAIL DEVELOPMENT, LLC,
  a Florida Limited Liability Company,

Case No.:

and

AUSTIN PARK DEVELOPMENT, LLC
  a Florida Limited Liability Company,

     Plaintiffs,

v.

RUSCO INVESTMENTS, INC.
  a Florida Company,

PINNACLE MUTUAL, INC.
  a Florida Company,

LASS ACCOUNTING AND BUSINESS
SERVICES, INC.
  a Florida Company,

JULIE HOLDEN
  an Individual,

RUTH LIVERPOOL
  an Individual,

ALDWYN LIVERPOOL
  an Individual,

     Defendants.
                        /

## VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiffs, MAINSAIL DEVELOPMENT, LLC and AUSTIN PARK DEVELOPMENT, LLC, by and through undersigned counsel, do hereby sue Defendants, RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND

BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL, and hereby alleges:

## INTRODUCTION

This is an action for Racketeer Influenced and Corrupt Organizations Act, ("RICO"), remedies authorized by federal statutes pursuant to 18 U.S.C. 1961 *et. seq.*; for declaratory and injunctive relief; for actual, consequential and exemplary damages; for relief from acts of Conversion, Conspiracy, Unjust Enrichment, Breach of Contract, Recission, violations of Florida's Unfair and Deceptive Trade Practices Act, Fraud, Breach of Fiduciary Duty, Civil Theft, Replevin and Tortious Interference with an Advantageous Business; and for all other relief which this Honorable Court deems just and proper under all circumstances which have occasioned this action. *See* 18 U.S.C. §§1964(a) and (c) ("Civil Rico").

The primary cause of this action is a criminal enterprise engaged in a pattern of racketeering activity, and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts during the past years. The predicate acts alleged here cluster around criminal acts of conversion, theft, fraud, and conspiracy in which the Defendants would collude to introduce an individual or entity to deposit monies with one of the Defendants serving as an "investor" to whom they would raise the required capital for a project and the other Defendant as the "advisor" and upon the receipt of the monies, perform no actions to further any investment or project but to divert the monies through multiple subsidiary companies all of which performed no functions. When faced with a demand for closing date of the loan pursuant to contract and honorable business practice, the Defendants would routinely indicate that the monies are "held up" due to a third party, typically an entity of the federal government such as the Federal Bureau

of Investigations ("FBI"), and that they were on the way to being returned.  No monies never have been or ever will be returned absent a court's order.

Other RICO predicate acts, although appearing to be isolated events, were actually part of the overall conspiracy and pattern of racketeering activity alleged herein, e.g. wire fraud, and bank fraud.

The primary objective of the racketeering enterprise has been to inflict severe and sustained hardship upon the Plaintiffs, with the intent of impairing, obstructing, preventing the Plaintiff from conducting business, and in an effort to alleviate the Plaintiff of monies with no intent to perform anything of value in return.

## PARTIES

1. Plaintiff, Mainsail Development, LLC ("Mainsail"), at all times relevant to this action, is a Florida Limited Liability Company incorporated under the laws of the State of Florida with its principle place of business and physical location is located at 2780 East Fowler Ave., Suite 303, Tampa, FL 33612.

2. Plaintiff, Austin Park Development, LLC ("Austin Park"), at all times relevant to this action, is a Florida Limited Liability Company incorporated under the laws of the State of Florida with its principle place of business and physical location located at 2780 East Fowler Ave., Suite 303, Tampa, FL 33612.  The sole member and manager is Plaintiff, Mainsail Development, LLC.

3. Defendant, Rusco Investments, Inc. ("Rusco"), at all times relevant to this action, is a Florida Company incorporated under the laws of the State of Florida with its principle place of business and physical location, as determined by state records, located at 9531 W. Sample Rd., Coral Springs, FL 33065.

3

4. Upon information and belief, the actual address for Rusco Investments, Inc. is located at 5448 E. Leitner Dr., Coral Springs, Florida 33067 where its President, Ruth Liverpool, resides.

5. Defendant, Pinnacle Mutual, Inc. ("Pinnacle"), at all times relevant to this action, is a Florida Company incorporated under the laws of the State of Florida with its principle place of business and physical location, as determined by state records, located at 9531 W. Sample Rd., Coral Springs, FL 33065.

6. Upon information and belief, the actual address for Pinnacle Mutual, Inc. is located at 5448 E. Leitner Dr., Coral Springs, Florida 33067 where its President, Ruth Liverpool, resides.

7. Upon information and belief, Pinnacle Mutual, Inc., is a subsidiary of Rusco Investments, Inc.

8. Defendant, Lass Accounting and Business Services, Inc. ("Lass"), at all times relevant to this action, is a Florida Company incorporated under the laws of the State of Florida with its principle place of business and physical location, as determined by state records, located at 9531 W. Sample Rd., Coral Springs, FL 33065.

9. Upon information and belief, the actual address for Lass Accounting and Business Services, Inc. is located at 5448 E. Leitner Dr., Coral Springs, Florida 33067 where its President, Ruth Liverpool, resides.

10. Upon information and belief, Lass Accounting and Business Services, Inc., is a subsidiary of Rusco Investments, Inc.

11. Defendant, Julie Holden ("Holden"), an individual, is a Utah resident who regularly conducts business within the State of Florida, in particular that of the jurisdiction of the Middle District of Florida, and resides at 1207 West 650 South, Lehi, Utah 84043-3713.

12. Defendant, Ruth Liverpool ("R. Liverpool"), an individual and a director of each corporate defendant, upon information and belief, is a Florida resident and resides at 5448 E. Leitner Dr., Coral Springs, Florida 33067.

13. Aldwyn Liverpool ("A. Liverpool"), an individual and a director of Defendant, Lass Accounting and Business Services, Inc., upon information and belief, is a Florida resident and resides at 5448 E. Leitner Dr., Coral Springs, Florida 33067.

## JURISDICTION AND VENUE

### Jurisdiction

14. This Honorable Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. §1331 and 18 U.S.C. §1964 because the claims arise from federal law, namely the RICO statutes and its civil remedies.

### Venue

15. Venue is proper as Plaintiffs reside and are located in this jurisdiction and the damages that were suffered are located in the location of the Plaintiffs' residence.

16. Conversion is continuous act. Accordingly, if the property at issue is converted from one county to another, either county can be venue. Intercapital Funding Corp. v. Gisclair, 683 So.2d 530, 532 (Fla. 4th DCA 1996).

17. The property at issue is funds directed from the Plaintiff's located in Hillsborough County, Florida. As this county is within the geographic jurisdiction of this Honorable Court, venue is proper in this court.

5

## FACTS COMMON TO ALL COUNTS

### Mainsail and Austin Park Business'

18. Mainsail is a local Hillsborough County, Florida corporation in the business of real estate development.

19. Mainsail is continuously seeking co-investors to share in the expense and rewards of successful development of land.

20. In doing so, Mainsail often seeks out investors that have the ability to assist in the large funding that is required to complete these projects.

21. When doing this, Mainsail acquires Letters of Commitment detailing out the project name, principles, funding amount, terms and guidelines of the project including securities, deposits, escrowed monies, and closing conditions.

### Behind The Scenes of Rusco, Its Subsidiaries and Its Affiliates

22. R. Liverpool owns and is a director of each and every corporate defendant in this action.

23. In addition, her husband, A. Liverpool, is the additional owner and director of Lass.

24. Both have full knowledge and direct control of the corporate entities and themselves in this action.

25. Upon information and belief, R. Liverpool is either an owner, affiliated and/or associated with the following individuals or entities:

   a.   RA Holding, Inc.;

   b.   ARCC Investments and Trust, Inc.;

   c.   APEX Global Funding, Inc.;

   d.   The Ruth Foundation, Inc.;

   e.   R.A.H. International, Corp.;

    f.   BEBBA Investments, Inc.;

    g.   TBKT Investments, Inc.;

    h.   OMB International Investments, Inc.;

    i.   Davidson/Roberts Investments, Inc.;

    j.   A. L. Masonry, Inc.;

    k.   Venture Global, Inc.;

    l.   Myers Investments, Inc.;

    m.  First Colonial, Inc.;

    n.   Destiny Title, Inc.;

    o.   Vee Global Investment Limited, Inc.;

    p.   Chisolm Investments, Inc.;

    q.   DK & KD Investments, Inc.;

    r.   Natrualle Investments, Inc.;

    s.   Jomatt Investments, Inc.;

    t.   Florida Housing & Investors, Inc.;

    u.   Bebba Investments, Inc.;

    v.   Manifold Investments, Inc.;

    w.  Assured Capital Consultants, LLC; and

    x.   Hastings Investments, LLC.

26. Both Pinnacle and Lass are subsidiaries of Rusco and in fact actually extensions of the company with just another name.

27. All received monies from the Plaintiffs and corresponded with the Plaintiffs, each delaying out the closing and giving excuses as to why the funding was not completed.

28. Holden is a long time friend and colleague of R. Liverpool.

29. The two are, as stated by R. Liverpool, "great friends and ... [R. Liverpool] is standing with [Holden]."

30. R. Liverpool, A. Liverpool, and Holden, individually and through the corporate Defendants, were in a conspiracy to lure the Plaintiffs into providing a large fee to the parties and then to never work on the project and retain the monies for themselves.

## The Austin Park Project

31. Mainsail, on or about December 2009, was in the process of seeking the proper funding and other necessities to develop the Austin Park Apartments on Piney Grove Road in Columbia, South Carolina ("Austin Park Project").

32. Mainsail had contracted with HH Hunt in regards to the construction side of the deal already and moved on to the funding aspect.

33. Mainsail had been in contact with a prior investor named Julie Holden who had assisted on another project that Mainsail had conducted.

34. Holden had become an individual whom Mainsail confided in and depended on for advice and counsel for funding of projects.

35. Holden indicated via email and phone conversations that she could not fund the project herself but knew of an individual or entity that could, Mrs. Ruth Liverpool and Rusco Investments, Inc.

36. Holden, as a "consultant", in conjunction with Mainsail and R. Liverpool and Rusco, signed a Letter of Commitment as to the Austin Park Project on or about February 17, 2010 binding each party to obligations as to the project.

37. A copy of the agreement is attached as Exhibit A.

38. A key provision of this agreement was that the Owner, Mainsail, was to "deposit a fully refundable fee ("Owner's Fee") equal to one percent (1%) of the Funding Amount ($298,000) with the Investor [and i]f for any reason the project does not fund, the entire Owner's Fee shall be refunded to owner." (Ex. A ¶10).

39. This was also confirmed by Holden to Plaintiffs on or about February 24, 2010 via email.

40. Rusco indicates that closing would occur within ninety (90) days of the receipt of the retainer fee, as detailed in provision 10 of the Letter of Commitment.

41. Mainsail then wires the Owner's Fee of $298,000.00 to Rusco on February 24, 2010.

42. A copy of the wire transfer (redacted as required by law) is attached as Exhibit B.

43. The deadline for a closing to occur, per the written indication of Rusco, was May 25, 2010.

44. A week prior to the deadline for closing, Pinnacle forwards the Plaintiffs loan documents to be signed.

45. Further, Jennifer Deans of Pinnacle, indicates to the Plaintiffs that the closing would occur on May 27, 2010.

46. Closing did not occur on that date as promised and was no past their May 25, 2010 deadline.

47. On or about June 10, 2010, Plaintiffs execute a Mortgage, Investment Agreement, Promissory Note and Lass Accounting Agreement. Copies are attached as Exhibits C – F respectively.

48. These documents were required for the funding to occur pursuant to Section 7.1 of the Investment Agreement.

49. At this point, all requirements of the Plaintiffs had been met, including the payment of the owner's fee and execution and delivery of all documents required.

50. Pursuant to Section 4.1 of the Investment agreement, closing was mandated to occur within ninety (90) days of these documents being executed, or September 7, 2010.

51. R. Liverpool then indicated on or about June 22, 2010 that she confirmed the funds and was wiring the funds in the Plaintiffs' account that day.

52. The monies never did arrive as promised by R. Liverpool on June 22, 2010.

53. On or about June 30, 2010, R. Liverpool again indicated that the funds would not be transferred until about July 4, 2010 because she was on vacation.

54. On July 8, 2010, R. Liverpool again shifts blame as to why the closing and forwarding of monies has not occurred indicating that Plaintiffs failed to tender a 3% fee, contrary to the express language as indicated in the Letter of Commitment (Ex. A, ¶10).

55. On or about July 9, 2010, HH Hunt, whom the Plaintiffs were in contract with for the lands purchase, required an additional $25,000.00 to extend the contract past the initial closing date. Plaintiffs tendered that money under the premise that R. Liverpool would finish the closing within that time frame.

56. R. Liverpool then, on or about August 11, 2010, indicates via email to the Plaintiffs that the "Feds" have all required documents and that they have confirmed the funds for the Austin Park Project to be disbursed within 72 hours.

57. This funding did not occur as promised by R. Liverpool on August 11, 2010.

58. On or about August 16, 2010, Holden emailed the Plaintiffs indicating that the Feds cleared R. Liverpool of wrongdoing and that the funding would occur next week.

59. Once again, no funding occurred during that week per R. Liverpool's August 16, 2010 promise.

60. On or about September 27, 2010, Plaintiffs again requested to know when the funding would occur.

61. R. Liverpool replied that same day indicating it would be in the first week of October, 2010.

62. The first, second, and third weeks of October came and went with no funding.

63. On or about October 27, 2010, R. Liverpool indicated that funding would occur on October 28 or 29, 2010.

64. Once again, no funding occurred as of those dates and R. Liverpool attempted to amend the "first draw" amounts per the investor agreement.

65. R. Liverpool indicated in an October 27, 2010 correspondence that she was not going to close on just the land.

66. On or about November 10, 2010, the Plaintiffs demanded the return of their owner fee monies transferred prior in the amount of $298,000.00 in the form of a Notice for Demand for Return of Monies Pursuant to Fla. Stat. §772.11.

67. This demand was given to Defendants, Rucso, Pinnacle, Lass, and R. Liverpool. The demand requested the closing be completed by November 2010 or for return of the monies and treble damages in compliance with Fla. Stat. §772.11.

68. No response, closing, or return of monies occurred within the thirty (30) days after the November 20, 2010 deadline to close.

**The Funds of the Austin Park Project**

69. Upon information and belief, R. Liverpool is also a platform trader by profession.

70. Upon information and belief, her season for active trading encompasses a 10 month span of which the time period the Plaintiffs monies have been in her and her companies hands have overlapped.

71. Upon information and belief, R. Liverpool had comingled, converted, and otherwise illegally and without Plaintiffs' permission, used those funds for personal profit in her trading profession.

## Bridge Way Apartments Project

72. Plaintiffs further tendered Defendants an amount of $100,000.00 for a similar transaction pertaining to the Bridge Way Apartments project by wire transfer on April 23, 2010.

73. The Defendants put on the same dog and pony show as with the Austin Park Project by failing to either fund or return the monies when requested.

## The Funds of the Bridge Way Apartments Project

74. Upon information and belief, the funds tendered as part of the Bridge Way Project have been utilized and converted in the same manner as the funds in the Austin Park Project.

## Engagement Fee Three Card Monti Scheme

75. Upon information and belief, no closing or funding has ever occurred by R. Liverpool or any of the associated entities on any such project they have collected monies on and there are more victims that have been caught in this scheme.

76. Upon information and belief, R. Liverpool indicates she is a international investor interested in funding projects.

77. Upon information and belief, R. Liverpool arranges that if the individual or entity provides 2-5% of the funds and promises to fund the project within 90-120 days of receiving that fee as a JV Partner.

78. Upon information and belief, R. Liverpool will then charge additional percentages of the funding amount at closing to her and A. Liverpool's corporate entities for Construction Oversight Fees, Accounting Oversight Fees, Origination Fees and Broker Fees.

79. Upon information and belief, she explicitly indicates the engagement fee is refundable as the enticement to provide her with the monies and upon receipt, never intends to close and will never close and never provide the monies back.

80. Upon information and belief, these funds gained from the engagement fees are filtered and utilized in the numerous entities R. Liverpool is owner or affiliated with, on personal items such as cars, houses and the like, and for use in her platform trading profession.

### CLAIMS FOR RELIEF

### COUNT I
### Violations of RICO
### 18 U.S.C. §§1961-1968
### 1962(a)

81. Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

82. Beginning in or about December 2009 and continuing through and including the date of the filing of this Complaint, RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL and others known and unknown, have associated in fact and therefore, constitute an enterprise (hereinafter "ENTERPRISE").

83. The unlawful conduct described in paragraphs 93 through 132 below (Predicate Acts 1 through 40), evidences similar intents, results, accomplices, and methods of commission,

or are otherwise interrelated and not isolated incidents, so as to sufficiently constitute a pattern of racketeering activity.

84. The ENTERPRISE has engaged in numerous instances of unlawful conduct arising from its operation in Florida. The instances of the ENTERPRISE's unlawful conduct include but are not limited to:

    a.  Knowingly obtaining or using, or endeavoring to obtain or use, the property of another with intent to deprive the other person of a right to the property or a benefit from the property.

    b.  Making or disseminating or causing to be made or disseminated before the general public, or any portion thereof, a misleading advertisement.

    c.  Engaging in a scheme to defraud and, in furtherance of that scheme, communicating with any person with the intent to obtain property from that person.

    d.  Engaging in a scheme to defraud and obtaining property thereby.

    e.  Knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity or knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

    f.  With criminal intent received any proceeds derived, directly or indirectly, from a pattern of racketeering activity in the acquisition of any title to, or any right,

14

interest, or equity in, real property or in the establishment or operation of any enterprise.

g. Through a pattern of racketeering activity acquired or maintained, directly or indirectly, any interest in or control of any enterprise or real property.

h. Be employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern or racketeering activity.

i. To conspire or endeavor to violate any of the provisions of subsection 1961(a)-(d).

85. In furtherance of the affairs of the enterprise, Defendants RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL and others known and unknown, committed the acts described in Paragraphs 93 through 132 below.

86. The officers, directors and/or managerial agents were acting on behalf of the corporate Defendants RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., and LASS ACCOUNTING AND BUSINESS SERVICES, INC., in addition to acting individually, in conducting the affairs of those Defendants, authorized or engaged in conduct in violation of RICO.

87. Defendants RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL, and others known and unknown, in Florida, did knowingly obtain or use, or endeavor to obtain or use, the property of another,

Plaintiffs, with intent to deprive the other person of a right to the property or a benefit from the property.

88. Defendants RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL and others known and unknown, in Florida, did make or disseminate or cause to be made or disseminated before the general public, or any portion thereof, a misleading advertisement.

89. At various times and places enumerated in paragraph one (1) through eighty (80) above, Defendants did receive income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. 1962(a) (prohibited activities).

90. At various times and places enumerated in paragraph one (1) through eighty (80) above, Defendants have conducted and/or participated, directly or indirectly, in the affairs of said RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§1961(5) ("pattern" defined) and 1962(a) and (c).

91. During the five (5) calendar years preceding the date of the filing of this lawsuit, Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts itemized in the RICO laws at 18 U.S.C. §1961, and did so in violation of RICO law 18 U.S.C. 1962(a).

92. All Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten a continuing threat of their respective racketeering activities in violation of RICO law 18 U.S.C. 1962(a).

## PREDICATE ACTS

### PREDICATE 1

### FRAUD

93. On or about February 17, 2010, HOLDEN, RUSCO, and R. LIVERPOOL, entered into an agreement containing false and misleading statements with Plaintiffs.

### PREDICATE 2

### WIRE FRAUD

94. On or about February 19, 2010, RUSCO sent an email to Plaintiffs' agent containing false and misleading statements.

### PREDICATE 3

### WIRE FRAUD / THEFT

95. On or about February 24, 2010, RUSCO sent a request for and received funds via a wire transfer from the Plaintiffs with the criminal intent to deprive the Plaintiffs of those funds.

### PREDICATE 4

### WIRE FRAUD

96. On or about March 3, 2010, RUSCO sent an email to Plaintiffs' agent containing false and misleading statements.

### PREDICATE 5

### WIRE FRAUD

97. On or about March 10, 2010, PINNACLE sent an email to Plaintiffs containing false and misleading statements.

## PREDICATE 6

## WIRE FRAUD

98. On or about March 26, 2010, RUSCO sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 7

## WIRE FRAUD

99. On or about March 30, 2010, RUSCO sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 8

## WIRE FRAUD

100.     On or about April 7, 2010, RUSCO sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 9

## WIRE FRAUD / THEFT

101.     On or about April 23, 2010, RUSCO sent a request for and received funds via a wire transfer from the Plaintiffs with the criminal intent to deprive the Plaintiffs of those funds.

## PREDICATE 10

## WIRE FRAUD

102.     On or about May 11, 2010, PINNACLE sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 11

## WIRE FRAUD

103.     On or about May 13, 2010, HOLDEN sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 12

## FRAUD

104.     On or about May 17, 2010, PINNACLE entered into an agreement containing false and misleading statements with Plaintiffs.

## PREDICATE 13

## WIRE FRAUD

105.     On or about May 17, 2010, PINNACLE sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 14

## MAIL FRAUD

106.     On or about May 21, 2010, LASS sent a letter containing false and misleading statements to the Plaintiffs via the United States Postal Service ("USPS").

## PREDICATE 15

## WIRE FRAUD

107.     On or about May 24, 2010, PINNACLE sent an email containing false and misleading statements to Plaintiffs' agent.

## PREDICATE 16

### WIRE FRAUD

108.     On or about May 25, 2010, PINNACLE sent an email to Plaintiffs' agent containing false and misleading statements.

### PREDICATE 17

### WIRE FRAUD

109.     On or about May 27, PINNACLE sent an email to R. LIVERPOOL and Plaintiffs' agent containing false and misleading statements and in furtherance of the conspiracy to commit RICO violations.

### PREDICATE 18

### WIRE FRAUD

110.     On or about June 1, 2010, PINNACLE sent an email to Plaintiffs' agent containing false and misleading statements.

### PREDICATE 19

### WIRE FRAUD

111.     On or about June 15, 2010, PINNACLE sent an email containing false and misleading statements to Plaintiffs' agent.

### PREDICATE 20

### WIRE FRAUD

112.     On or about June 16, 2010, PINNACLE sent an email containing false and misleading statements to Plaintiffs' agent.

### PREDICATE 21

### WIRE FRAUD

113.     On or about June 17, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 22

## WIRE FRAUD

114.     On or about June 18, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 23

## WIRE FRAUD

115.     On or about June 24, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 24

## WIRE FRAUD

116.     On or about June 30, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 25

## WIRE FRAUD

117.     On or about July 8, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 26

## WIRE FRAUD

118.     On or about July 13, 2010, R. LIVERPOOL spoke with Plaintiffs and made false and misleading statements.

## PREDICATE 27

**WIRE FRAUD**

119.     On or about August 5, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

**PREDICATE 28**

**WIRE FRAUD**

120.     On or about August 9, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

**PREDICATE 29**

**WIRE FRAUD**

121.     On or about August 11, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent and to HOLDEN containing false and misleading statements.

**PREDICATE 30**

**WIRE FRAUD**

122.     On or about August 16, 2010, HOLDEN sent an email to Plaintiffs' containing false and misleading statements.

**PREDICATE 31**

**WIRE FRAUD**

123.     On or about August 17, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

**PREDICATE 32**

**WIRE FRAUD**

124.     On or about August 18, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

### PREDICATE 33

### WIRE FRAUD

125.     On or about August 19, 2010, HOLDEN sent an email to Plaintiffs and other "JV" Investors containing false and misleading statements.

### PREDICATE 34

### WIRE FRAUD

126.     On or about August 19, 2010, R. LIVERPOOL sent an email to Plaintiffs' agent containing false and misleading statements.

### PREDICATE 35

### WIRE FRAUD

127.     On or about August 23, 2010, R. LIVERPOOL conversed via Skype, an internet based peer to peer messaging system, with Plaintiffs' agent and in doing so made false and misleading statements.

### PREDICATE 36

### WIRE FRAUD

128.     On or about August 31, 2010, R. LIVERPOOL sent multiple emails to Plaintiffs' agent containing false and misleading statements.

### PREDICATE 37

### WIRE FRAUD

129.     On or about September 27, 2010, R. LIVEPROOL sent at least three different emails to Plaintiffs' agent containing false and misleading statements.

## PREDICATE 38

### WIRE FRAUD

130.     On or about October 27, 2010, R. LIVERPOOL sent two different emails to Plaintiffs and their agents containing false and misleading statements.

## PREDICATE 39

### WIRE FRAUD

131.     On or about October 29, 2010, R. LIVERPOOL conversed via Skype with Plaintiffs' agent and in doing so made false and misleading statements.

## PREDICATE 40

### CONSPIRACY

132.     On or about October 29, 2010, R. LIVERPOOL conversed via Skype with HOLDEN, and in doing so conspired to commit further RICO violations to the detriment of the Plaintiffs.

## COUNT II
### Violations of RICO
### 18 U.S.C. §§1961-1968
### 1962(b)

133.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

134.     Beginning in or about December 2009 and continuing through and including the date of the filing of this Complaint, RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL and others known and unknown, have associated in fact and therefore, constitute an enterprise (hereinafter "ENTERPRISE").

135.    At various times and places enumerated in paragraph one (1) through eighty (80) above, Defendants did acquire or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce.

136.    During the five (5) calendar years preceding the date of the filing of this lawsuit, Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts itemized in the RICO laws at 18 U.S.C. §1961, and did so in violation of RICO law 18 U.S.C. 1962(b). These are found labeled as Predicate Acts 1 – 40 and alleged in paragraphs 93 to 132 of this Complaint.

137.    All Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten a continuing threat of their respective racketeering activities in violation of RICO law 18 U.S.C. 1962(b). These are found labeled as Predicate Acts 1 – 40 and alleged in paragraphs 93 to 132 of this Complaint.

## COUNT III
### Violations of RICO
### 18 U.S.C. §§1961-1968
### 1962(c)

138.    Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

139.    Beginning in or about December 2009 and continuing through and including the date of the filing of this Complaint, RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL and others known and

unknown, have associated in fact and therefore, constitute an enterprise (hereinafter "ENTERPRISE").

140.     At various times and places enumerated in paragraph one (1) through eighty (80) above, Defendants did associate with a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce.

141.     All Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprises through a pattern of racketeering activity, all in violation of 18 U.S.C. §§1961 and 1962(c).

142.     During the five (5) calendar years preceding the date of the filing of this lawsuit, Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts itemized in the RICO laws at 18 U.S.C. §1961, and did so in violation of RICO law 18 U.S.C. 1962(c).   These are found labeled as Predicate Acts 1 – 40 and alleged in paragraphs 93 to 132 of this Complaint.

143.     All Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten a continuing threat of their respective racketeering activities in violation of RICO law 18 U.S.C. 1962(c). These are found labeled as Predicate Acts 1 – 40 and alleged in paragraphs 93 to 132 of this Complaint.

### COUNT IV
### Violations of RICO
### 18 U.S.C. §§1961-1968
### 1962(d)

144.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

145.    Beginning in or about December 2009 and continuing through and including the date of the filing of this Complaint, RUSCO INVESTMENTS, INC., PINNACLE MUTUAL, INC., LASS ACCOUNTING AND BUSINESS SERVICES, INC., JULIE HOLDEN, RUTH LIVERPOOL, and ALDWYN LIVERPOOL and others known and unknown, have associated in fact and therefore, constitute an enterprise (hereinafter "ENTERPRISE").

146.    At various times and places enumerated in paragraph one (1) through eighty (80) above, Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962 (b) and (d).

147.    At various times and places enumerated in paragraph one (1) through eighty (80) above, Defendants did conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962 (c) and (d).

148.    During the five (5) calendar years preceding the date of the filing of this lawsuit, Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts itemized in the RICO laws at 18 U.S.C. §1961, and did so in violation of RICO law 18 U.S.C. 1962(d). These are found labeled as Predicate Acts 1 – 40 and alleged in paragraphs 93 to 132 of this Complaint.

149.    All Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten a continuing threat of their respective racketeering activities in violation of RICO law 18 U.S.C. 1962(d). These are found labeled as Predicate Acts 1 – 40 and alleged in paragraphs 93 to 132 of this Complaint.

## COUNT V
### Conversion

150.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

151.     Defendants have taken possession of Plaintiffs monies in the amount of $398,000.00.

152.     Defendants, in taking possession, intended and still intend to exercise ownership over the monies.

153.     Plaintiffs, by contract and by demand, have real ownership right of the monies.

154.     Defendants' ownership is inconsistent with the Plaintiffs right of possession.

155.     Plaintiffs made multiple demands for the monies by email, phone, and most recently on November 10, 2010 by certified mail, return receipt requested.

156.     On or about February 24, 2010, the Defendants converted to their own use, monies in the amount of $298,000.00 that was the property of the Plaintiffs in the value of $298,000.00.

157.     On or about April 23, 2010, the Defendants converted to their own use, monies in the amount of $100,000.00 that was the property of the Plaintiffs in the value of $100,000.00.

158.     Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

<u>COUNT VI</u>
<u>Conspiracy</u>

159.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eight (80) above as set forth above as if all were set forth fully herein.

160.    Defendants conspired to induce the Plaintiffs to provide the Defendants $398,000.00 in monies under the guise of a contract with no intent to ever perform the contract or provide anything of value for the monies.

161.    Defendants conspired to gain the Plaintiffs' $398,000.00 in furtherance of their RICO enterprises which are and were engaged in racketeering activity in violation of 18 U.S.C. §§ 1961 and 1962.

162.    Defendant, Holden, in placing the Plaintiffs in communication and contracting with the other Defendants and further proliferating to the Plaintiffs that funding was just about to occur with knowledge that it was not, did commit an overt act in pursuance of the conspiracy.

163.    The remaining Defendants, in contracting with the other Defendants and further proliferating to the Plaintiffs that funding was just about to occur with knowledge that it was not, did commit an overt act in pursuance of the conspiracy.

164.    Damage has resulted to the Plaintiffs, namely in the loss of $398,000.00 in addition to two land closing deals and development projects, as a direct result of the conspiracy.

165.    Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

**COUNT VII**
**Unjust Enrichment**

166.    Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

167.    Plaintiff's conferred a benefit of $398,000.00 upon the Defendants.

168.    Defendants have appreciated the benefit of the $398,000.00.

169.     Defendants have accepted and retained the benefit.

170.     Defendants have been unjustly enriched as a result of the retention of these monies.

171.     Circumstances would make it inequitable for Defendants to retain the benefit without paying something of value for the monies.

172.     Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

**COUNT VIII**
**Breach of Contract**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

173.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

174.     Plaintiffs and Defendants entered into a Letter of Commitment to fund the Austin Park Project as well as an Investor Agreement governing the duties and obligations of the parties.

175.     Plaintiffs performed all duties and obligations under the Letter of Commitment and the Investor Agreements, primarily providing a $298,000.00 owner's fee to start the funding process.

176.     Defendants breached the contracts by failing to fulfill any of their duties and obligations under the contract including closing within 90 days of the receipt of the owner's fee or within 90 days of the completion of all duties by the owner under the Investor Agreement and failing to return the monies when requested.

177.     Defendants further have breached the implied covenant of good faith and fair dealing when entering into and performing a contract by fraudulently inducing the

Plaintiffs into the funding contract to retain a $298,000.00 owners fee with no intent to perform or ever close or fund the project.

178.     Plaintiffs and Defendants entered into an agreement to fund the Bridge Way Apartments Project in a manner similar to that of the Austin Park Project with a 2% fee to be paid in increments to initiate the loan process.

179.     Defendants breached the Bridge Way Apartments Project contracts by failing to fulfill any of their duties and obligations under the contract including, but not limited to, failing to return the fully refundable monies when requested.

180.     Defendants further have breached the implied covenant of good faith and fair dealing when entering into and performing a contract for the Bridge Way Apartments Project by fraudulently inducing the Plaintiffs into the funding contract to retain a $100,000.00 owners fee with no intent to perform or ever close or fund the project.

181.     As a result, the Plaintiffs have been damaged in the amount of the contract deposit they presented plus incidental damages as a result of the lost projects that relied upon the funding as contemplated by the funding agreements.

182.     Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

## COUNT IX
### Violation of Florida Unfair and Deceptive Trade Practices Act

183.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

184.     Defendants' fraudulent and illegal actions to obtain the monies of the Plaintiffs with no intent to fund or provide anything of value in violation of the agreements between the parties is unfair and deceptive conduct.

31

185.    The Plaintiffs were aggrieved by the conduct of the Defendants and as a result suffered monetary damages and irreparable harm.

186.    Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

## COUNT X
## Fraud

187.    Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

188.    Defendants, as enumerated in paragraph one (1) through eighty (80) above, made several false statements concerning material facts, including but not limited to, that the owner's fee was refundable, that the closing date for funding was several times in May, then July, then September and finally in October, and that the "Feds" were the cause of the delay for the funding and why none was able to be provided.

189.    Defendants made these false statements concerning material facts with actual knowledge they were false, or with not knowing if the statements were true or not, or should have known the statements were not true.

190.    Defendants made all of these false statements with the intent of the Plaintiffs to act in providing monies and to not act in requesting and gaining the tendered monies back.

191.    Plaintiffs relied on the false statements of the Defendants and were injured as a result.

192.    Defendants made all of the false statements in bad faith at all times in dealing with the Plaintiffs.

193.    Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

## COUNT XI
### Breach of Fiduciary Duty

194.    Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

195.    Defendant Holden, through prior business relationships with the Plaintiffs and through contracting to be the consultant in the Austin Park Development Project, shared a fiduciary relationship wherein Plaintiffs reposed trust and confidence in Defendant Holden and placed Defendant Holden in a position of trust as to funding of their projects.

196.    The additional Defendants, through the Letter of Commitment and Investor Agreement, shared a fiduciary relationship wherein Plaintiffs reposed trust and confidence in the Defendants and placed them in a position of trust as to the custodian of funds to be held in escrow for the funding of the Austin Park Development Project.

197.    All Defendants breached their duty.

198.    As a direct and proximate result of the breaches, Plaintiffs were damaged.

199.    Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

## COUNT XII
### Civil Theft
### Fla. Stat. §772.11

200.    Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

201.    In misappropriating and refusing to return the "refundable" owner's fees for the Austin Park Project and the Bridge Way Apartments Project, the Defendants acted with criminal intent and committed theft under Fla. Stat. §812.04.

202.    Defendants knew the funds they are withholding and misappropriating from the Plaintiff were not legally theirs and had no entitlement to the funds.

203.    In committing theft and obtaining those funds with criminal intent, the Defendants intended to temporarily or permanently deprive the Plaintiffs of their right to those funds.

204.    Defendants acted with criminal intent in appropriating the aforesaid funds for Defendants' own use.

205.    On or about November 10, 2010, Plaintiff demanded repayment of the aforesaid monies and notified the Defendants of their intent to file suit under Fla. Stat. §772.11 ("The Civil Theft Statute"), and seek triple damages sustained by the Plaintiffs as provided under the Civil Theft Statute. A true and correct copy of the letters are attached hereto as Composite Exhibit G.

206.    Defendants have refused to return the stolen funds and make Plaintiffs whole despite written requests.

207.    Plaintiffs have been damaged in the amount of at least $398,000.00 by reason of Defendants' theft of funds from the Plaintiffs.

208.    Defendants' actions constitute civil theft, entitling Plaintiffs to recover the sum of treble damages of at least $1,194,000 plus attorney's fees and costs incurred by Plaintiffs in order to recover the aforesaid sum, pursuant to Fla. Stat. §772.11.

209.    Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

## COUNT XIII
### Replevin

210.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

211.     This is an action to recover possession of personal property located Florida.

212.     A description of the property sought is the $398,000.00 wired to the Defendants by the Plaintiff on or about February 24, 2010 and April 23, 2010.

213.     As to the best knowledge, information and belief, the value of the property is $398,000.00

214.     As to the best knowledge, information and belief, the property is located in the bank accounts of the Defendants.

215.     Plaintiff is entitled to the property by the Letter of Commitment and Investor Agreement attached to the Complaint.

216.     The property is wrongfully detained by Defendants.

217.     The Defendants came into possession by fraudulently inducing the Plaintiffs to provide this to them via wire transfer under the guise the monies were to be used to obtain funding for their development projects.

218.     Plaintiff's best knowledge, information, belief, defendant retains because they indicate the monies are not able to be accessed at this time being locked up overseas.

219.     The property was not taken for any tax, assessment, fine pursuant to law

220.     The property was not taken under an execution or attachment against Plaintiffs' property

221.     Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

## COUNT XIV
### Tortious Interference With Advantageous Business Relationship

222.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) above as set forth above as if all were set forth fully herein.

223.     Plaintiffs were in a business relationship with HH Hunt for the purpose of the land for the Austin Park Project.

224.     Defendants had express knowledge of the business relationship.

225.     Defendants committed intentional and unjustified interference with the relationship by refusing to fund the project, closing on the funding, or returning the monies when requested by the Plaintiffs.

226.     Plaintiffs were damaged as a result of interference in many ways, including but not limited to, losing the contract for the purchase of the land and other damages.

227.     Plaintiffs have performed all conditions precedent, or all have been waived by the Defendants, prior to filing this action.

## COUNT XV
### Civil Remedies for Criminal Practices (Fla. Stat. §772.104)

228.     Plaintiffs reallege each and every allegation as set forth in paragraphs one (1) to eighty (80) and ninety-three (93) – one hundred twenty-three (123) above as set forth above as if all were set forth fully herein.

229.     Defendants have, with criminal intent, received proceeds derived, directly or indirectly, from a pattern of criminal activity to use or invest, whether directly or indirectly, any such proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

230.     Defendants have, through a pattern of criminal activity, acquired and/or maintained, directly or indirectly, an interest in or control of any enterprise or real property.

231.     As a result of the Defendants' actions, Plaintiffs have suffered damages.  Pursuant to Fla. Stat. §772.104(1), Plaintiffs demand threefold the actual damages they sustained.

### JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues triable to a jury lawfully convened.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, MAINSAIL DEVELOPMENT, LLC and AUSTIN PARK DEVELOPMENT, LLC, hereby pray for the following relief:

### As to Count I

A. That this Honorable Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have received any income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. 1962(a) (prohibited activities).

B. That this Honorable Court liberally construe the RICO laws and thereby find that all Defendants have conducted and/or participated, directly or indirectly, in the affairs of said RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§1961(5) ("pattern" defined) and 1962(a) and (c), *supra*.

C. That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily

during pendency of this action, and permanently thereafter, from receiving any income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

D.  That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conducting or participating, either directly or indirectly, in the conduct of the affairs of any RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§1961(5) and 1962(a) and (c), *supra*.

E.  That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in Count I, *supra*.

F.  That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(a) and from all other violation(s) of applicable State and Federal law(s).

G.  That judgment be entered for the Plaintiffs and against all Defendants for Plaintiffs' actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(a), according to the best available proof.

H. That all Defendants pay to Plaintiffs treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(a), according to the best available proof.

I. That all Defendants pay to the Plaintiffs all damages sustained by Plaintiffs in consequence of Defendants' several violations of 18 U.S.C. 1962(a), according to the best available proof.

J. That all Defendants pay to Plaintiffs their costs of the lawsuit incurred herein, including but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees.

K. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(a) and from all other violations of applicable State and Federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [*sic*], for the benefit of the Plaintiffs, their heirs and assigns.

L. That Plaintiffs have such other further relief as this Honorable Court deems just and proper, under the circumstances of this action.

**As to Count II**

A. That this Honorable Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO enterprise of persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities did

affect, interstate and foreign commerce in violation of 18 U.S.C. 1962(b) (prohibited activities).

B.  That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from acquiring or maintaining, whether directly or indirectly, any interest in or control of any RICO enterprise of persons, or of other individuals associated in fact, who are engaged in, or whose activities, do affect, interstate or foreign commerce.

C.  That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in Count II, *supra*.

D.  That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and Federal law(s).

E.  That judgment be entered for the Plaintiffs and against all Defendants for Plaintiffs' actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b), according to the best available proof.

F.  That all Defendants pay to Plaintiffs treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b), according to the best available proof.

G. That all Defendants pay to the Plaintiffs all damages sustained by Plaintiffs in consequence of Defendants' several violations of 18 U.S.C. 1962(b), according to the best available proof.

H. That all Defendants pay to Plaintiffs their costs of the lawsuit incurred herein, including but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees.

I. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(b) and from all other violations of applicable State and Federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [*sic*], for the benefit of the Plaintiffs, their heirs and assigns.

J. That Plaintiffs have such other further relief as this Honorable Court deems just and proper, under the circumstances of this action.

## As to Count III

A. That this Honorable Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO enterprise of persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. 1962(c) (prohibited activities).

B. That this Honorable Court liberally construe the RICO laws and thereby find that all Defendants have conducted and/or participated, directly or indirectly, in the affairs of

said RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§1961(5) ("pattern" defined) and 1962(c), *supra*.

C.  That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from acquiring or maintaining, whether directly or indirectly, any interest in or control of any RICO enterprise of persons, or of other individuals associated in fact, who are engaged in, or whose activities, do affect, interstate or foreign commerce.

D.  That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conducting or participating, either directly or indirectly, in the conduct of the affairs of any RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§1961(5) and 1962(c), *supra*.

E.  That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in Count III, *supra*.

F.  That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(c) and from all other violation(s) of applicable State and Federal law(s).

G. That judgment be entered for the Plaintiffs and against all Defendants for Plaintiffs' actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(c), according to the best available proof.

H. That all Defendants pay to Plaintiffs treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(c), according to the best available proof.

I. That all Defendants pay to the Plaintiffs all damages sustained by Plaintiffs in consequence of Defendants' several violations of 18 U.S.C. 1962(c), according to the best available proof.

J. That all Defendants pay to Plaintiffs their costs of the lawsuit incurred herein, including but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees.

K. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(c) and from all other violations of applicable State and Federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [*sic*], for the benefit of the Plaintiffs, their heirs and assigns.

L. That Plaintiffs have such other further relief as this Honorable Court deems just and proper, under the circumstances of this action.

## As to Count IV

A. That this Honorable Court liberally construe the RICO laws and thereby find that all Defendants have conspired to acquire and maintain an interest in, and/or conspired to acquire and maintain an interest in, and/or conspired to acquire and maintain control of, a

RICO enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. §§1961(5), 1962(b) and (d), *supra*.

B. That this Honorable Court liberally construe the RICO laws and thereby find that all Defendants have conspired to conduct and participate in said RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§1961(5), 1962(c) and (d), *supra*.

C. That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conspiring to acquire or maintain an interest in, or control of, any RICO enterprise that engages in a pattern of racketeering activity in violation of 18 U.S.C. §§1961(5), 1962(c) and (d), *supra*.

D. That all Defendants and all their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from conspiring to conduct, participate in, or benefit in any manner from RICO enterprise through a pattern of racketeering activity in violation of the RICO laws at 18 U.S.C. §§1961(5) and 1962(c), *supra*.

E. That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more predicate acts in furtherance of the RICO enterprise alleged in Count IV, *supra*.

F. That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(d) and from all other violation(s) of applicable State and Federal law(s).

G. That judgment be entered for the Plaintiffs and against all Defendants for Plaintiffs' actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(d), according to the best available proof.

H. That all Defendants pay to Plaintiffs treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(d), according to the best available proof.

I. That all Defendants pay to the Plaintiffs all damages sustained by Plaintiffs in consequence of Defendants' several violations of 18 U.S.C. 1962(d), according to the best available proof.

J. That all Defendants pay to Plaintiffs their costs of the lawsuit incurred herein, including but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees.

K. That all damages caused by all Defendants, and all gains, profits, and advantages derived by all Defendants, from their several acts of racketeering in violation of 18 U.S.C. 1962(d) and from all other violations of applicable State and Federal law(s), be deemed to be held in constructive trust, legally foreign with respect to the federal zone [*sic*], for the benefit of the Plaintiffs, their heirs and assigns.

L. That Plaintiffs have such other further relief as this Honorable Court deems just and proper, under the circumstances of this action.

**As to Count V**

Plaintiffs request entry of judgment for the Plaintiffs and against the Defendants for the value of the property, plus interest and any such other relief as this Honorable Court deems just and proper under the circumstances of this action.

**As to Count VI – XI and XIV**

Plaintiffs request entry of judgment for the Plaintiffs and against the Defendants for actual damages, consequential damages, loss of profits, prejudgment interest, and where applicable under law or contract, attorney's fees and costs. Plaintiffs further request any further relief as this Honorable Court deems just and proper under the circumstances of this action.

**As to Count XII**

Plaintiffs request entry of judgment for the Plaintiffs and against the Defendants for the sum of at least $1,194,000 which includes the principle and statutory treble damages. Plaintiffs further request entry of judgment of attorney's fees and costs incurred by Plaintiffs in order to recover the aforesaid sum, pursuant to Fla. Stat. §772.11 and any other relief as this Honorable Court deems just and proper under the circumstances of this action.

**As to Count XIII**

Plaintiffs request entry of judgment for the Plaintiffs and against the Defendants for possession of property and any other relief as this Honorable Court deems just and proper under the circumstances of this action.

**As to Count XV**

Plaintiffs request entry of judgment for the Plaintiffs and against the Defendants for threefold of the actual damages and where applicable under law or contract, attorney's fees and costs.

Plaintiffs further request any further relief as this Honorable Court deems just and proper under the circumstances of this action.

      Dated this 6th day of January, 2011.

                                    Christopher L. Hixson, Esq.
                                    Florida Bar No.:0041158
                                    Lynch & Robbins PA
                                    Attorneys
                                    2639 Dr. MLK Jr. Street N.
                                    St. Petersburg, FL 33704
                                    Telephone: (727) 822-8696
                                    Facsimile: (727) 471-0616
                                    E-mail: chixson@floridalawyer.com

**(rest of page left intentionally blank)**

47

## VERIFICATION

I DECLARE, under penalty of perjury, that I have read the foregoing Verified Complaint

and that the same is true and correct.

Executed this _6th_ day of January, 2011.

**MAINSAIL DEVELOPMENT, LLC**

By: _____
Roy Melvin as Authorized Representative

**AUSTIN PARK DEVELOPMENT, LLC**

By: _____
Roy Melvin as Authorized Representative

36