UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MAINSAIL DEVELOPMENT, LLC, and**
**AUSTIN PARK DEVELOPMENT, LLC,**

    **Plaintiffs,**

v.                                                **Case No: 8:11-CV-0045-T-33AEP**

**RUSCO INVESTMENTS, INC., PINNACLE**
**MUTUAL, INC., LASS ACCOUNTING AND**
**BUSINESS SERVICES, INC., JULIE HOLDEN,**
**RUTH LIVERPOOL, and ALDWYN LIVERPOOL,**

    **Defendants.[1]**
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court on **Defendants Rusco Investments, Inc., Pinnacle Mutual, Inc., Lass Accounting and Business Services, Inc., Ruth Liverpool and Aldwyn Liverpool's** (collectively, "Defendants") **Motion to Compel Arbitration** (Dkt. No. 4), which was filed on January 28, 2011. Plaintiffs, Mainsail Development, LLC and Austin Park Development, LLC, filed a Response and Incorporated Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration (Dkt. No. 8) on February 11, 2011. The Court has carefully reviewed and considered the underlying arguments, and is otherwise fully acquainted with the issues presented therein. For the reasons that follow, this Court recommends that Defendants' Motion be granted.

---

[1] The Court notes that the Clerk entered a default against Defendant Julie Holden on February 22, 2011 (Dkt. No. 10).

**Factual Background**

On January 6, 2011, Plaintiffs filed a Complaint (Dkt. No. 1) against Defendants alleging violations under the Racketeer Influenced and Corrupt Organizations Act (RICO) and further alleging against Defendants counts of conversion, conspiracy, unjust enrichment, breach of contract, recission, violations of Florida's Unfair and Deceptive Trade Practices Act, fraud, breach of fiduciary duty, civil theft, replevin, and tortious interference with an advantageous business relationship. (Dkt. No. 1 at 2). The facts, as alleged in the Complaint, are set forth below:

Mainsail Development, LLC ("Mainsail") engages in the business of land development and seeks investors to fund its various projects. (Dkt. No. 1 at 6). Mainsail is also the sole shareholder and manager of Austin Park Development, LLC. (Dkt. No. 1 at 3). In December 2009, Mainsail sought investors to fund an apartment complex project, "Austin Park Project," located in Columbia, South Carolina. (Dkt. No. 1 at 8). Julie Holden ("Holden"), a previous investor with Mainsail, suggested that Mainsail contact Ruth Liverpool and Rusco Investments, Inc. ("Rusco") as potential investors for the Austin Park Project. In February 2010, Holden, acting as a consultant for Mainsail, initiated an agreement between Mainsail, Ruth Liverpool, and Rusco to provide funding for the Austin Park Project. (Dkt. No. 1 at 8) The parties' agreement was laid out in a Letter of Commitment ("Commitment") (Dkt. No. 12, Ex. 1).

The Commitment established that Plaintiffs would be required to deposit an "Owner's Fee" with Ruth Liverpool and Rusco that would be fully refunded in the event that funding

2

was not provided for the Austin Park Project. (Dkt. No. 12, Ex. 1 ¶10). The Commitment further required that Plaintiffs complete certain documents and return these documents to Ruth Liverpool and Rusco before closing on the Austin Park Project would begin. (Dkt. No. 12, Ex. 1 ¶11). Plaintiffs wired the Owner's Fee to Rusco on February 24, 2010 and completed all required documentation, including an Investment Agreement (Dkt. No. 1, Ex. D), by June 2010. (Dkt. No. 1 at 9–10). The Investment Agreement provided that closing would occur within ninety business days after all conditions of the Commitment had been met by Plaintiffs. (Dkt. No. 1, Ex. D ¶4.1). According to Plaintiffs, closing was mandated to occur by September, 7, 2010 (Dkt. No. 1 at 10).

After Plaintiffs completed their responsibilities under the Commitment, Ruth Liverpool indicated that funding for the Austin Park Project would be deposited into Plaintiffs' account; however, Plaintiffs allege that the funding was never deposited as promised. (Dkt. No. 1 at 10). Plaintiffs further claim that on several subsequent occasions, Ruth Liverpool promised that the funding would be deposited into Plaintiffs' account, but the funding was still not deposited. As of November 10, 2010, Plaintiffs assert that Ruth Liverpool and Rusco had failed to provide funding for the Austin Park Project; therefore, Plaintiffs requested that closing be completed by November or the Owner's Fee be returned pursuant to the Commitment. (Dkt. No. 1 at 11). Plaintiffs claim that closing did not occur and the Owner's Fee was not returned. (Dkt. No. 1 at 11). Furthermore, Plaintiffs accuse Ruth Liverpool of wrongly utilizing Plaintiffs' Owner's Fee, without their permission, for personal profit in her capacity as a platform trader. (Dkt. No. 1 at 12).

3

Based on the facts described above, Plaintiffs contend that they have failed to receive what they have bargained for under the Commitment and that Ruth Liverpool, Rusco, and the other entities and individuals affiliated therewith were plotting a fraudulent scheme against Plaintiffs in an effort to extort Plaintiffs' money for personal gain. Therefore, Plaintiffs have sued Defendants for the causes of action outlined above.

In their Motion, Defendants seek to compel arbitration as agreed to by the parties under the Commitment. (Dkt. No. 4). The Governing Law provision of the Commitment states, "In the event that a dispute should arise out of this agreement . . . the parties hereby agree to resolve said dispute according to the [Rule] of the American Arbitration Association," (Dkt. No. 12, Ex. 1) the clause further provides, "The prevailing party shall be entitled to arbitrator's fees, arbitration costs and legal costs, but not attorney's fees." (Dkt. No 12, Ex. 1). Defendants argue that Plaintiffs should be compelled to submit their claims to arbitration under the Governing Law provision of the Commitment because the claims asserted by Plaintiffs are the type of claims the parties intended to fall within the scope of the Governing Law Provision. (Dkt. No. 4 at 3, 5–7). Defendants further contend that under relevant case law, the Federal Arbitration Act ("FAA") establishes a strong presumption in favor of arbitration, and any ambiguities regarding the scope of arbitration should be resolved in favor of arbitration. (Dkt. No. 4 at 3–5).

Plaintiffs' Response requests that the Motion be denied on the grounds that, while the FAA favors upholding arbitration agreements, the liberal policy does not require an absolute referral to arbitration in every situation. (Dkt. No. 8 at 3). Plaintiffs first argue that a valid

4

arbitration clause must be established before they can be compelled to submit to arbitration. (Dkt. No. 8 at 3–4). According to the Response, the Governing Law provision quoted above does not amount to a valid arbitration clause under principles of Florida contract interpretation. (Dkt. No. 8 at 4–6). In the alternative, the Response alleges that Plaintiffs were induced to enter into the arbitration agreement by fraud; therefore, they contend that this Court should hold that the arbitration clause is invalid. (Dkt. No. 8 at 4–6).

## Discussion

Arbitration agreements are governed by the FAA, which establishes a national policy that favors the resolution of disputes by arbitration when the parties have contracted for that mode of dispute resolution. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2006) (emphasis added). According to the Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, Section 2 of the FAA evidences Congress' intent to declare a federal policy that strongly favors upholding arbitration agreements. 460 U.S. 1, 24 (1983); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–220 (1985) (discussing the legislative history of the FAA and holding that the purpose behind the FAA is to ensure judicial enforcement of private arbitration agreements).

5

Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the *construction of the contract language itself* . . . or like defense to arbitrability." *Id.* at 24–25 (emphasis added); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (The Court held that when determining the scope of an arbitration agreement, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

While the FAA establishes a strong presumption in favor of arbitration, the Supreme Court has also held that general state law principles of contract interpretation should apply when attempting to determine the scope of an arbitration clause. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees Leland Stanford Junior U.*, 489 U.S. 468, 475–476 (1989).

The Court must first determine the gateway issue of whether there is a valid agreement between the parties to arbitrate. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). As stated previously, state law principles of contract interpretation will apply. *First Options*, 514 U.S. at 944. Plaintiffs contend that a valid arbitration agreement does not exist under the Governing Law provision of the Commitment when Florida laws of contract interpretation are applied. (Dkt. No. 8 at 4–6). Under Florida laws of contract interpretation, contracts should be interpreted in a manner that is "reasonable, practicable, sensible, and just."

6

*7-Eleven, Inc. v. Stin, LLC*, 961 So.2d 977, 981 (Fla. 4th DCA 2007). The contract terms "should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable." *Thompson v. C.H.B., Inc.*, 454 So.2d 55, 57 (Fla. 4th DCA 1984).

Plaintiffs argue that the plain meaning of the words of the Governing Law provision do not compel a finding that the parties agreed to submit their disputes to arbitration. (Dkt. No. 8 at 6). According to Plaintiffs, the provision only evidences the intent of the parties to resolve disputes according to the Rule of the American Arbitration Association, and a clear, unambiguous direction that the parties be required to submit their disputes to arbitration does not exist under the Commitment. (Dkt. No. 8 at 6).

However, looking at the plain meaning of the language of the Governing Law provision, "In the event that a dispute should arise out of this agreement . . . the parties hereby agree to resolve said dispute according to the [Rule] of the American Arbitration Association," (Dkt. No. 4 at 2) it is not unreasonable to conclude that the parties intended to submit their disputes to arbitration. In *H.S. Gregory v. Electro-Mechanical Corp.*, the Eleventh Circuit addressed an arbitration clause similar to the one at issue in this case. 83 F.3d 382 (11th Cir. 1996). In *H.S.Gregory*, the relevant clause stated in pertinent part, "any dispute between any of the [p]arties which may arise hereunder or under any agreement referred to as an exhibit herein . . . will be referred to arbitration under the Rules of the American Arbitration Association." *Id.* at 383. The Eleventh Circuit found that the clause amounted to a valid arbitration provision. *Id.* at 386. There is only a slight difference between the arbitration

7

clause at issue in *H.S. Gregory* and the arbitration clause at issue in the present case: the omission of the word "arbitrate" from the clause. Arguably, the mere exclusion of the word "arbitrate" in the Governing Law provision does not preclude the reasonable interpretation that the parties agreed to submit their disputes to arbitration.

Additionally, as Plaintiffs point out in their Response, in attempting to ferret out the intention of the parties, "individual terms of a contract are not to be considered in isolation, but as a whole and in relation to one another." *Jerry's, Inc. v. Miami*, 591 So.2d 1000, 1001 (Fla. 3rd DCA 1991). The Governing Law provision of the Commitment further provides, "The prevailing party shall be entitled to arbitrator's fees, arbitration costs and legal costs, but not attorney's fees." This additional language provides clear evidence of the parties' intent to submit their disputes to arbitration. Moreover, as stated previously, the FAA favors upholding arbitration agreements, and ambiguities in the contract language should be resolved in favor of arbitration. *Moses*, 460 U.S. at 24–25. Therefore, if, as Plaintiffs contend, the language of the Commitment is ambiguous as to arbitration, the ambiguity should be resolved in favor of arbitration.

Thus, the Court concludes that a valid arbitration provision exists under the Commitment because such a conclusion is a reasonable interpretation of the Governing Law provision, as construed under Florida contract law. Furthermore, such a conclusion is consistent with the FAA's goal of enforcing valid arbitration provisions.

Next, the Court must address Plaintiffs' argument that the arbitration clause is invalid because it was procured by fraud. (Dkt. No. 8 at 6–8). Section 4 of the FAA provides in

pertinent part, "The court shall hear the parties, and upon being satisfied that the *making of the agreement for arbitration* or the failure to comply therewith is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2006) (emphasis added). If evidence exists of fraud in the inducement of the arbitration clause, then there is an issue with regard to the "making of the agreement for arbitration," and the court may evaluate the validity of the arbitration agreement. *Prima Paint Corp v. Flood & Conklin Manufacturing, Co.* 388 U.S. 395, 403–404 (1967). In *Prima Paint*, the Supreme Court held that under Section 4 of the FAA, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," but may not consider claims of fraud in the inducement of the entire contract. *Id.* at 404.

Plaintiffs allege in their Response that it is "evident" they were fraudulently induced to enter into the arbitration agreement. (Dkt. No. 8 at 8). However, Plaintiffs did not make such a claim in their Complaint. In fact, as Defendants point out in their Motion (Dkt. No. 4 at 2), the Complaint is silent as to the Governing Law provision of the Commitment, and the Complaint only alleges fraud in the inducement of the entire Commitment. (Dkt. No 1 at 30–31). Under *Prima Paint*, the Court should only consider the validity of the arbitration agreement if there is evidence that Plaintiffs were induced to enter into the arbitration clause by fraud, but the Court should not consider the validity of the arbitration agreement if the fraud is for the inducement of the entire contract. Thus, the Court finds that Plaintiffs have not sufficiently

9

alleged fraud in the inducement of the arbitration agreement to justify judicial review of the making of the arbitration agreement under Section 4 of the FAA.

Accordingly, as per the discussion above, the Court has found that a valid arbitration clause exists between the parties and that Plaintiffs have not alleged facts sufficient to find that they were induced to enter into the arbitration agreement by fraud. Therefore, the Court finds it proper to compel Plaintiffs to submit to arbitration as agreed to in the Commitment.

## Conclusion

For the reasons stated herein, this Court respectfully **RECOMMENDS** that Defendants' Motion to Compel Arbitration (Dkt. No. 4) be **GRANTED** and that the case be administratively closed and stayed pending arbitration.

**IT IS SO REPORTED** at Tampa, Florida on this 20th day of June, 2011.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Honorable Virginia M. Hernandez Covington

Counsel of Record